## HERVEY VENEER CO., OLD FORT, N. C., v. UNITED STATES.

### No. 46423.

Court of Claims.
Jan. 5, 1948.

Robert H. McNeill, of Washington, D. C., for plaintiff.

John B. Miller, of Washington D. C., and Peyton Ford, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

JONES, Chief Justice.

This case involves operations under a timber sale agreement between the Hervey Lumber Company, a corporation, and the defendant, covering a portion of the Pisgah National Forest in North Carolina. Later the contract was transferred to the Hervey Veneer Company. The term plaintiff will be used in referring to either of these companies.

David E. Hervey was secretary-treasurer, vice president, and general manager of one company, and president and general manager of the other, and executed the original agreement on behalf of plaintiff. He had received a Civil Service appointment in the Forest Service in 1935 and served approximately two years in the headquarters of the Pisgah National Forest, examining and appraising timber for purchase by the United States, marking timber on sales areas and doing forest management work. He resigned from this position in 1937 to engage in the lumber business.

In December 1938 David E. Hervey approached officials of the Pisgah National Forest with a request that a rather large tract of timber be advertised, affording him opportunity to bid. He asked that the boundary so selected contain some veneer timber. After some surveying and marking, some 4,300 acres were included in an advertisement for bids on April 8, 1939. The areas covered by the proposal were divided into 15 units.

Two sample areas had been marked to demonstrate to interested parties the system of marking that would be followed in the entire sales area.

During the period involved in this suit the Forest Service maintained the following objectives as to its program for the Appalachian National Forests: (1) Protection of the headwaters of navigable streams; (2) protection and development of existing forests for the production and reproduction of timber stands for the supplying of forest products; (3) management of wild life (fish and game) resources; (4) demonstration of forestry practices for lands privately as well as publicly owned; and (5) development of a recreational background in forest environment for the public.

(7) That defendant failed, at any time during the contract period, to mark timber in advance of cutting in sufficient amount, or that the amount of timber so marked in advance was ever so small as to restrict or delay plaintiff's operations, or to restrict or delay subcontracting by plaintiff, or to prevent the coordination of operations by plaintiff or its subcontractors with weather conditions, topography, roads, exposure, surface conditions, or other factors; or

(8) That defendant marked timber in such manner as to reflect a difference in the application of the principles exemplified in the sample areas:

"(a) As between such sample areas and the sale area as a whole or any unit thereof; or

"(b) As between timber standing in the lower and more accessible portions of the sale area and timber standing in the higher, more remote portions of such area; or"

(9) That defendant re-marked areas that had been cut over by plaintiff (a) in such,

manner as to reflect departure by defendant from the marking principles exemplified in the sample areas in the previous marking of any area so remarked or (b) in any instance other than where concessions were made to plaintiff upon its request to assure plaintiff of having the benefit of any doubt with respect to border-line trees; or

(10) That the net gain realized per unit of cutting during the period from February to November 1943 (both inclusive) could reasonably be applied on a per thousand-foot basis to determine the profit which would have been realized by plaintiff if it had cut the full amount possible from the sale area during the contract period.

### Conclusion of Law.

Upon the foregoing special findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.

Judgment is rendered against the plaintiff for the cost of printing the record herein, the amount thereof to be entered by the clerk and collected by him according to law.

A party of six or more interested lumbermen on April 19, 1935, were conducted on a cruise over a part of the sales area, including the sample areas. The markings on the sample areas were discussed with them as was the draft of the timber sale agreement which the successful bidder would be called upon to sign. While in the sample areas the timber management assistant explained that the marks on the trees indicated the trees to be cut. He pointed out with explanations trees that had not been marked and trees that had been marked, and which were to be cut, explaining that the marked trees included (1) trees to be cut for the purpose of thinning the stand, (2) trees that were diseased to such an extent that cutting was indicated, and (3) trees that were considered "poor risks"—more likely to lose than to gain in the next several years. The discussion continued until the members of the party indicated that they were satisfied with the amount of time spent in instruction. They were advised that further instruction would be arranged upon request for anyone interested.

David E. Hervey was present at these discussions. When another interested lumberman asked Mr. Hervey if he thought a profitable operation could be made on the basis of the marking shown, Mr. Hervey replied that while no heavier marking could be guaranteed, he would rely upon his friendship with the officials of the Forest Service to obtain more liberal markings.

A few days later at the request of David E. Hervey the Timber Management Assistant again went with him to examine marked sections of the sales area, inspected some of the optional areas, and discussed the condition of the timber in the lower areas where cutting would be required.

The Hervey Lumber Company was notified on May 9, 1939, that it was the successful bidder and the timber sale agreement was executed soon thereafter.

The contract provided among other things that all merchantable dead timber and all chestnut trees should be cut, whether marked or not; merchantable live timber other than chestnut was to be marked for cutting in the manner set out in the contract and the term "merchantability" was defined. The cutting was to be done within different time limits for the different units. A minimum amount of cutting was to be done from the beginning and the entire contract to be finished in not less than three and one-half and not more than five years.

The contract required that payment should be made by plaintiff in advance installments of not less than $2,000 each, as determined by the forest officer in charge and when called for by him.

Plaintiff almost from the very beginning was far behind the minimum schedule in the cutting of timber. It delayed from time to time in putting up the necessary deposit; it asked and secured at different times four modifications of the contract, the effect of which was to waive the failure to meet the minimum requirements for the period already passed, but which had the effect of increasing the requirements for the later period. During the whole period of operations the plaintiff cut less than 30

percent of the amount necessary to meet the contract requirements.

Plaintiff insists that all this was the fault of the defendant and was due to various breaches of the contract on the part of the Government's officers.

The defendant claims that its officers at all times met the conditions of the contract and that the fault was the responsibility of the plaintiff.

All the material facts are set out in detail in the findings and will not be repeated here.

Among other complaints and alleged breaches of contract on the part of the defendant plaintiff claims that defendant rejected applications of plaintiff to cut timber which it was entitled to cut; that the defendant restricted plaintiff's cutting to those trees which were badly rotted, worthless or practically worthless or only of fair quality; that the defendant delayed the operations of the plaintiff in cutting, processing and removal of timber, and interfered with plaintiff's logging operations, or restricted plaintiff's subcontractors; that but for these interferences during the contract the plaintiff could have cut and removed more timber than was cut and removed; that plaintiff's complaints were ignored; that the defendant failed at any time during the contract period to mark timber in advance of cutting in sufficient amount to enable plaintiff to operate properly; that the defendant marked timber in such a manner as to reflect a difference in the application of the principles exemplified in the sample areas; and that defendant re-marked areas that had been cut over by plaintiff in such a manner as to reflect departure by defendant from the marking principles exemplified in the sample areas.

While the evidence is conflicting as to some of these complaints, it does not satisfactorily establish any of them.

A careful examination of the evidence suggests that David E. Hervey probably relied upon his ability to get a more liberal marking than the sample areas indicated. He stood on Pisgah's heights and viewed what he thought was a promised land. It is difficult to believe, after reading the record, that he sought to possess it by the wording of a proposed contract upon which all interested parties might bid. The proposed contract contained terms which he must have realized neither he nor his competitors could meet without probable loss. Could it have been his hope that, after the contract had been signed and his competitors excluded, he could secure a softening of its terms because of his acquaintance with the forest officers? The testimony does not preclude that interpretation and there are sidelights in the record that lend color to that conclusion. It is apparent from the whole record that they were far more lenient with plaintiff than could ordinarily be expected in a contract of this kind. They repeatedly waived the failure to meet minimum requirements for a specific period; they overlooked plaintiff's efforts to cut certain types of timber that it specially wanted and its failure at times to cut timber which the contract required it to cut, but which was not to plaintiff's advantage. Mr. Hervey apparently presumed upon his friendship with the forest officers, but while they made every reasonable concession, they stood their ground on the major issue.

We are not unmindful of the difficulties which plaintiff was called upon to face. The company upon which it relied had financial difficulties. Then, too, it was naturally disappointed when it did not receive more favorable markings. It is at least doubtful if anyone could have profitably operated under the specific terms of the contract. But there they were, and plaintiff had voluntarily signed. In fact, plaintiff's general manager, Hervey, had been the first to suggest a contract. It is to the credit of the Forest Service that, while undertaking to lighten plaintiff's obligations in reasonable ways, its officials did not lose sight of their obligation to preserve the national interest. Conservation of natural resources is of vital importance. It is the assurance of continuing strength to any country. We have a just respect for the qualities usually found in a forest ranger. That respect has been earned by his courtesy, his loyalty and his sense of duty. The facts of the instant case bear out this estimate. They are in line with the best traditions of the Forest Service.

The testimony is convincing and supports the findings which practically dispose of the case and justify the conclusion that there was no substantial failure on the part of the defendant to meet the terms of the contract as executed.

The plaintiff is not entitled to recover, and the petition is dismissed. It is so ordered.